UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SANDRA SNYDER, Personal Representative
of the Estate of Celeste P. Dennison, Deceased,

        Plaintiff,

v.

        Case Number 06-15757-BC
        Honorable Thomas L. Ludington

BLUE CROSS AND BLUE SHIELD
OF MICHIGAN,

        Defendants.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REVERSE THE ERISA PLAN ADMINISTRATOR'S DECISION, DENYING DEFENDANT'S MOTION TO AFFIRM THE PLAN ADMINISTRATOR'S DECISION, REMANDING TO THE PLAN ADMINISTRATOR, AND CANCELLING HEARING

Now before the Court are cross-motions for judgment on the administrative record of a plan administrator's decision, under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq*., to deny Plaintiff Sandra Snyder's claim for benefits.

Plaintiff has made no showing, based in the administrative record, that the plan administrator's denial of benefits was arbitrary and capricious when it determined that the terms of the plan excluded Plaintiff's decedent's custodial care in a nursing home. As to Defendant Blue Cross and Blue Shield of Michigan's motion to affirm the plan administrator's denial of benefits, however, despite the fact that Plaintiff did not argue a procedural deficiency related to notice or appeal under 29 U.S.C. § 1133 and 29 C.F.R. § 2650.503-1(g)(1), the Court's obligation to review only the administrative record is hampered by its difficulty discerning what, if any, notice Defendant provided to Plaintiff. Without an identifiable denial and appeal in the record for review, the Court cannot conclude that Defendant's benefits determination should be affirmed as a matter of law.

Accordingly, Plaintiff's motion to reverse the plan administrator's decision will be denied, Defendant's motion to affirm the plan administrator's decision will also be denied, and the Court will remand the decision to the plan administrator for a determination that complies with ERISA's notice and appeal requirements.

I.

Plaintiff is the daughter and personal representative of Celeste Dennison, who passed away on October 13, 2003. Plaintiff's decedent resided at an inpatient care facility, Rawlins House in Pendleton, Indiana, from some point in 2001 until her death. After Plaintiff's decedent exhausted her benefits under Medicare on January 1, 2003, she had health care coverage under her deceased husband's employer's self-funded benefit plan. Defendant is the claims administrator for that plan.

Notable for a case based on a claim of benefits under ERISA, the administrative record filed by Defendant has no Bates stamp, or other numeration consistent throughout the entirety of the record, on its pages. The unindexed exhibits appear to be the following: (A) a collection of medical billing records; (B) the healthcare benefits plan of Plaintiff's decedent's husband, through his former employer, General Motors Corporation; (C) a collection of documents that may reflect internal information tracking claims and decisions on those claims by Defendant; (D) approximately 334 pages of medical records; (E) approximately 92 pages of medical billing and related correspondence; (F) correspondence pertaining to the contested denial of coverage; and (G) documents labeled "Customer Service Worksheets," which seem to be internal to Defendant. Of these exhibits, only Exhibits B and C are paginated. In similar fashion, Plaintiff's brief cites only generally to the "administrative record" and generally does not provide any more specific citation within the administrative record. In the pages that follow, the Court requests the indulgence of any careful

reader, who might correctly believe that the Court's review must be constrained to the administrative record, even when the parties find using page numbers cumbersome.

Beyond the challenge of deficient pagination, the introductory recitation of facts above provides an example of the parties' general disregard for citing to the administrative record. The facts provided in that paragraph derive largely from statements in the parties' briefs. Although the parties do not appear to disagree on these points, neither have they deigned to burden themselves with troubling citations. Accordingly, the Court will rely on Federal Rule of Civil Procedure 11 and the parties' consensus to assume the truth of the facts as they have been presented.

The parties do disagree on at least one significant point. Plaintiff alleges that $37,599 remains in dispute; Defendant alleges that $35,599 is in dispute. Once again, neither party offers any record citation for this figure.

A.

Setting aside the difficulties of referring to this particular administrative record, on September 28, 2004, the nursing home where Plaintiff's decedent resided requested a retrospective review of the claims for service. AR, Ex. C., p. 2. More specifically, the nursing home requested a review of 286 days and provided the medical record to Defendant. *Id*. On September 30, 2004, in what appears to be a prelude to a medical consultant review, someone summarized Plaintiff's decedent's history and physical, her prescriptions during the relevant time frame of January 1, 2003 to October 13, 2003, nursing notes written on an almost daily basis during the relevant time frame, and physical therapy history for that time frame. *See* AR, Ex. C., pp. 2-27. On October 14, 2004, someone called the nursing home to convey Defendant's decision, which approved payment for 37

days and denied payment for 249 days.[1]  *Id*. at pp. 22-23.  The skilled nursing facility medical record review, apparently of that same date, states as follows:

>     Case Summary: Patient was a 91 [year-old] female who became [Blue Cross] primary after exhausting Medicare benefit.  Patient history showed that she had close reduction of fracture femur in [September 2002].  She suffered from chronic renal insufficiency, chronic anemia and dementia.  Her [skilled nursing facility] therapy basically centered around management of several ulcers.  There is conflicting staging of ulcer coccygeal/gluteal area.  Assessed to be stage IV by physical therapy.  This wound was treated by physical from 3/7/03 through 4/6/03 by water pic, sharp and enzymatic debridement.  Rest of patient care was basic and did not require skilled nursing intervention.
>     On 1/30/03 patient was found to be lethargic and hypoxic.  X-ray showed pneumonia.  Treated with oral [antibiotics] and [oxygen] until 2/4/03.

*Id*. at pp. 25-26.  The review then concluded that, apart from pneumonia treated from January 30, 2003 to February 4, 2004 and management of a decubitus ulcer from March 7, 2003 to April 6, 2003, the rest of Plaintiff's decedent's care was not skilled nursing care.[2]  *Id*. at pp. 26-27.

On January 21, 2005, Defendant's associate medical director, Dr. Donald Dimcheff, sent a letter to the nursing home's bookkeeper.  After stating that 37 days were approved for the treatment

---

[1]Because the inpatient care facility's bookkeeper, Lynn Carpenter, was out sick, this information was related to a person identified only as "Shawn."  *Id*. at p. 23.

[2]Defendant also directs the Court's attention to an earlier note that appears to precede the medical record review:

>     Per 2004 [InterQual Medical Necessity Criteria] for skilled nursing-medical: It did not meet [severity of illness criteria].  There is a discrepency [*sic*] between the physical therapy measurements and nurse's measurement for tunneling of the coccyx/gluteal wound.  Physical therapy sites the wound as Stage IV but it appears to have been resolving.  However, during time of 3/7-4/6/03, [patient] was receiving wound debridement that meets [severity of illness criteria].  Sent the [medical] record to MCS for medical record review for a 286 day LOS from 1/1/03-10/13/03.  Patient expired on 10/14/03.

*Id*. at pp. 21-22.

of Plaintiff's decedent's pneumonia and ulcer, the remaining dates were not approved because:

> Our medical consultant noted that the Skilled Nursing Facility (SNF) therapy basically centered about management of several ulcers. The consultant noted conflicting staging of ulcers in the coccylgeal and gluteal areas. The patient's pnuemonia had resolved. The consultant concluded that the care provided was essentially basic care which could have been safely provided in an alternate setting. There were no skilled nursing care needs identified.

AR, Ex. F.

According to Defendant's database notes, on February 10, 2005, Plaintiff contacted Defendant to appeal the non-approval decision. AR, Ex. C, p. 27. She was advised to provide the documentation to show that she represented the estate, which she then provided, along with what Defendant characterized as her appeal, on April 6, 2005. *Id*. at pp. 27-28.

Defendant then commenced its "[First] Level [Department of Labor] Member Appeal Level." *Id*. at p. 28. Apparently without analysis, on April 11, 2005, this appeal resulted in the approval of three additional days (October 11-13, 2003) and non-approval of the remaining 246 days "due to MC loc". *Id*. at p. 29. On that same date, Defendant's associate medical director informed Plaintiff of the decision to approve three additional days and to deny coverage for 246 days. AR, Ex. F. He identified the decision only as an "appeal," without specifying its relationship to any other appeals or appeal process. *Id*. He stated, "The patient's care was custodial rather than skilled; will approve 10/11-10/13/03 for supportive care therapy during the terminal respiratory failure." *Id*. The letter concluded by advising Plaintiff that this was Defendant's final decision and that she could seek relief by filing a civil suit under ERISA.

On May 5, 2005, Plaintiff wrote to Defendant, asserting that she had not received denials of payment for August to October 2003. AR, Ex. F. She stated that she believed that her mother had required skilled and specialized care. *Id*.

On May 20, 2005, the facility requested its first-level appeal.[3] AR, Ex. C, p. 30. The notes recite that the medical record was forwarded to the Peer Review Organization of Michigan (PROM). Without analysis or any other record, it seems that the PROM agreed with Defendant's prior determination. *Id*. at p. 31.

On June 30, 2005, a senior account representative/consultant at General Motors, Mary Ellen Tucker, wrote to a person at Fidelity Investments regarding Plaintiff's decedent. AR, Ex. F. Tucker stated that Defendant denied the claims because they did not meet Defendant's guidelines for skilled nursing care and that the appeals process was exhausted as of June 13, 2005. *Id*.

Although not identified as a part of the administrative record, on February 14, 2006 and August 9, 2006, Defendant's representatives again wrote to Plaintiff (or her attorney) regarding its decision. Defendant's Notice of Removal, Plaintiff's Complaint, Ex. A, B. The first letter recited the physician reviewer's notations that Plaintiff's decedent had remained stable and at her usual level of confusion, that she maneuvered in her wheelchair, that she engaged in finger-painting; that she had some ulcers that responded to topical medication and reiterated the conclusion that she required custodial, but not skilled, care. *Id*. at Ex. A. The second letter described how the skilled nursing benefit was intended for those recovering from an injury, who are expected to improve to a predictable level of recovery, and who require less care than the acute care available at a hospital but more than can be provided at home. *Id*. at Ex. B.

---

[3]In its brief, Defendant describes that it treated this appeal as a second-level facility appeal because Plaintiff had already exhausted the first-level appeal process. The Court cannot discern from Defendant's database notes that some form of exhaustion occurred, although p. 31 of Exhibit C does use the phrase "second level appeal."

B.

Plaintiff's decedent had coverage through her deceased husband's employer's benefits plan. According to the benefit plan, the administrator "has discretionary authority to construe, interpret, apply and administer [the plan] . . . and may delegate various aspects of [the plan's] administration as it deems appropriate." Plan, art. I, § 2(b)(1); AR, Ex. B, p. 4. As to Defendant, the plan provides that a delegated carrier "shall have discretionary authority to construe, interpret, apply and administer [the plan] provisions." Plan, art. I, § 2(b)(2); AR, Ex. B, p. 4.

The plan specifically provides for skilled nursing facility coverage:

All skilled nursing admissions must be predetermined by the Utilization Review Organization or carrier, as appropriate.

An enrollee is eligible for benefits for covered expenses incurred in a skilled nursing facility only if the following conditions have been met:
a. The services are received on or after the enrollee's effective date of coverage under this [plan].
b. *The admission has been approved by the Utilization Review Organization or carrier*, as appropriate, and the enrollee is admitted to the skilled nursing facility by the order of a physician who certifies that the enrollee requires the type of care available at the facility.
c. The enrollee has benefit days available under the skilled nursing facility benefit period. . . .
d. The care received by the enrollee consists of definitive medical nursing, or other paramedical care.

Plan, App. A, III.B.1.; AR, Ex. B, pp. 103-104 (emphasis added). Thus, skilled nursing coverage requires pre-approval.

The plan also details exclusions and limitations on skilled nursing facility coverage:

a. *Skilled nursing facility admissions and services are covered only when the services are medically necessary*. As a condition of continued skilled nursing facility coverage, the Utilization Review Organization or carrier, as appropriate, may require written verification by the physician in charge of the case of the need for services. For the purposes of this subsection and of subsection 3.b., below, the Utilization Review Organization or carrier shall

-7-

> review the severity of the patient's illness and the nature and intensity of the services required/provided and, based upon such review, *shall have discretionary authority to interpret, apply and construct these provisions of the [plan]*. The exercise of this authority . . . shall be given full force and effect unless it is determined by the Plan Administrator to have been inconsistent with the [plan] provisions or arbitrary and capricious.
>
> b. *Coverage is not provided for care which is principally custodial or domiciliary . . . .*
> c. Notwithstanding a. and b. above, for the period of time the [plan] is secondary to the payment of Medicare benefits for skilled nursing facility services, Medicare's determination of coverage will be deemed to satisfy [plan] criteria as to medical necessity and maintenance, domiciliary and custodial care. However, *if aware of the admission during such period of time, the Control Plan, or another designated party, shall review the admission and advise the enrollee as to the ongoing coverage before the exhaustion of Medicare benefits*.

Plan, App. A, III.B.1.a.-c.; AR, Ex. B, p. 105 (emphasis added). Thus, skilled nursing facility coverage applies only when medically necessary and not for custodial care. The carrier has the discretion to make the determination regarding the services provided, although the carrier has an obligation, if it is aware of the circumstance, to advise an enrollee of whether coverage will be ongoing after the exhaustion of Medicare benefits.[4]

Additionally, the plan specifically excludes custodial care:

> Care does not include care, services, supplies or devices related to custodial or domiciliary care provided in an institutional setting (e.g. - hospital, nursing facility) except as provided under the home health care and hospice provisions . . . .

Plan, App. A, IV.R.; AR, Ex. B, p. 161.

The plan provides for an appeals process for its decisions:

> An enrollee will be given an opportunity for a full and fair review of a decision by the Plan Administrator denying eligibility for coverage under the [plan] . . . . * * * If the enrollee believes a decision of the Plan Administrator is inconsistent with the terms of the [plan], an appeal may be filed with the Employee Benefit Plans

---

[4]Plaintiff makes no argument regarding this provision.

Committee (EBPC) of the Corporation, which has been delegated final discretionary authority to construe, interpret, apply, and administer the [plan]. Such an appeal to the EBPC must be filed in writing within 60 days from the date of the written decision from the Plan Administrator denying a claim for benefits or eligibility initiated by forwarding the request to the Secretary, EBPC, Mail Code MC 482-B37-B36, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000. As part of the appeal, the enrollee must submit any written comments setting forth the basis for the belief that the Plan Administrator's decision is inconsistent with the terms of the [plan]. The EBPC shall be the final review authority with respect to appeals and its decision shall be final and binding upon the Corporation and any enrollee. A written decision on the request for review will be furnished to the primary enrollee within 60 days (120 days if special circumstances require an extension of time) after the date the written request is received by the EBPC.

If enrollees under the Health Maintenance Organization (HMO) option . . . wish to appeal a decision with regard to any issue, . . . they must follow the HMOs . . . exclusive review procedure. HMOs . . . are responsible for formulating their own medical policy. Decisions resulting from their appeal processes regarding medical policy are final and binding.

Plan, art. I, § 6(b), (c); AR, Ex. B, pp. 9-10.

Once appeals are exhausted, an enrollee may file suit based on the denial of a claim:

No action or suit at law may be commenced upon or under this [plan] *until 30 days after exhaustion of the applicable appeal procedure* described in Art I, Section 6(b). No such action by an enrollee for entitlement to benefits under this [plan] may be brought *more than two years after such claim has accrued*.

Plan, App. A, II.G.; AR, Ex. B, p. 87 (emphasis added).

## C.

On November 20, 2006, Plaintiff filed suit in state court. On December 27, 2006, Defendant removed the case to federal court. On April 4 and 6, 2007, respectively, Plaintiff and Defendant filed cross-motions for judgment on the administrative record.[5]

The Court has reviewed the parties' submissions and finds that the relevant law, to the extent

---

[5]Plaintiff's motion is unsigned, in contravention of Federal Rule of Civil Procedure 11(a), and single-spaced, in contravention of E.D. Mich. LR 5.1(a).

argued by the parties, has been set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. *Compare* E.D. Mich. LR 7.1(e)(2).

II.

"As a general principle of ERISA law, federal courts review a plan administrator's denial of benefits de novo, unless the benefit plan gives the plan administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *See Sanford v. Harvard Indus., Inc.*, 262 F.3d 590, 596 (6th Cir. 2001) (citations and internal quotations omitted). Yet when a plan grants the plan administrator discretion, courts review the administrator's decision under "the highly deferential arbitrary and capricious standard of review." *Id.* (citations and internal quotations omitted).

The Sixth Circuit has described the arbitrary and capricious standard of review as "the least demanding form of judicial review of administrative action. When it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Shields v. Reader's Digest Ass'n, Inc.*, 331 F.3d 536, 541 (6th Cir. 2003) (internal quotes and citation omitted). When applying this standard, the Court must determine whether the administrator's decision was reasonable in light of the available record evidence. Although the evidence may be sufficient to support a contrary finding, if there is a reasonable explanation for the administrator's decision denying benefits in light of the plan's provisions, then the decision was neither arbitrary nor capricious. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000).

Separate from the standard of review applicable to an administrator's benefits determination, a different standard of review applies to considering whether a plan's procedure for reviewing a

claim – including an appeal – comports with statutory requirements. *Kent v. Omaha Life Ins. Co.*, 96 F.3d 803, 806 (6th Cir. 1996) (citation omitted). Specifically, a de novo standard of review applies to a question of law regarding compliance with 29 U.S.C. § 1133. *Id*.

III.

Section 502(a)(1)(B) of ERISA authorizes an individual to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Plaintiff filed suit alleging a violation of this provision.

The parties agree that this Court should review Defendant's denial of benefits under the arbitrary and capricious standard. Indeed, the plan provides that the plan administrator, or its delegates, shall have "discretionary authority to interpret, apply and construe these provisions of the [plan]." Plan, art. I, § 2(b); AR, Ex. B, p. 4. With respect to this discretionary authority as applied to determination about skilled nursing facility care, "[t]he exercise of this authority . . . shall be given full force and effect unless it is determined by the Plan Administrator to have been inconsistent with the [plan] provisions or arbitrary and capricious." Plan, App. A, III.B.1.a.; AR, p. 105.

Although Plaintiff acknowledges that the appropriate standard of review is arbitrary and capricious, she goes on to discuss (for reasons not altogether clear) the principle that courts and administrators need not routinely defer to the opinion of a treating physician. Plaintiff contends that the administrative record reveals Plaintiff's decedent's declining health. She intimates, based on excerpts from medical notes, that her decedent required constant medical attention. Plaintiff concludes that Defendant's position reduces to "Because I said so."

Given the deference required to a plan administrator's determination when the plan grants discretion to the administrator, the Court cannot conclude that Plaintiff has carried her heavy burden. She has not demonstrated that Defendant reached its denial arbitrarily and capriciously. Plaintiff makes no attempt to cite to the record or to make any explanation of the excerpts that she provides. The Court is left to assume that these excerpts derive from somewhere in the voluminous record. In contrast, evidence identified by Defendant, largely drawn from its database notes and other internal tracking mechanisms, could well show a reasoned explanation for a denial of benefits, given the plan's exclusion of custodial care. *See* Plan, App. A, III.B.1.b., IV.R. Accordingly, the Court is not persuaded that Defendant's denial of benefits was arbitrary and capricious, so Plaintiff's motion to reverse the plan administrator is denied.

## IV.

Notwithstanding the denial of Plaintiff's motion, Defendant's cross-motion to affirm the plan administrator's denial of benefits warrants separate attention. Although Plaintiff has not challenged the denial of benefits on any procedural ground, the Court is constrained to render decisions that comply with the law. In a circumstance where a plan has granted the administrator discretion, a court must take care to review procedure rather than the substance of a benefits determination, because a court must not to substitute its judgment for the expertise of the plan administrator.

29 U.S.C. § 1133 requires that a plan provide notice and an opportunity for an appeal if the plan denies an ERISA claim:

> In accordance with regulations of the Secretary, every employee benefit plan shall –
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

The statute specifically permits regulations promulgated by the Department of Labor. 29 C.F.R. § 2650.503-1(g)(1) provides, in relevant part, for the following manner and content of notice to claimants of benefits determinations:

> [T]he plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. . . . The notification shall set forth, in a manner calculated to be understood by the claimant –
> (i) The specific reason or reasons for the adverse determination;
> (ii) Reference to the specific plan provisions on which the determination is based;
> (iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;
> (iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review . . . .

The statute serves two purposes: "(1) to notify the claimant of the *specific* reasons for a claim denial, and (2) to provide the claimant an opportunity to have that decision reviewed *by the fiduciary*." *Wenner v. Sun Life Assurance Co.,* 482 F.3d 878, 882 (6th Cir. 2007) (citation omitted). Although a procedural failure can result in a remand to the administrator, administrators need only "substantially comply" with ERISA requirements. *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 436 (6th Cir. 2006). A court must review all communications between an administrator and a plan participant to determine if sufficient information was provided, and communications that succeed in notifying a participant of the reasons for denial and permit a fair opportunity for review will not defeat the administrator's claim determination. *See id.* (citation omitted); *see also Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803 (6th Cir. 1996) ("[O]nce the purposes of [§ 1133] are met,

justice does not require, indeed it forbids, the reversal of a claim decision based on a technical defect.").

In *VanderKlok v. Provident Life & Accident Ins. Co.*, 956 F.3d 610, 615-616 (6th Cir. 1992), the Sixth Circuit concluded that a plan administrator failed to meet its obligations under § 1133 and the associated regulation. The defendant sent notice of the denial to the parent company of the plan administrator, rather than to the plaintiff. The notice neither stated specific reasons for the denial nor identified plan provisions that provided the basis for the denial. The notice provided no information regarding how to submit the claim for further review or what additional information could perfect the claim. The Court further concluded that the procedurally deficient notice prevented a "full and fair review" under § 1133(2) and reversed the denial of benefits. *Id*. at 616-617.

The appropriate remedy for a procedural defect varies by case. In *VanderKlok*, the Court did not remand the case to the defendant (whose error, rather than the plaintiff's, caused the procedural defect); instead, the Court remanded to the district court to take additional evidence from the plaintiff. *Id*. at 617, 619. In *Wenner*, 482 F.3d at 883-884, the Court affirmed the district court's reinstatement of improperly revoked benefits, at least until the plan administrator reached a determination that complied with plan provisions. In *McCartha v. National City Corp.*, 419 F.3d 437, 447 (6th Cir. 2005), the Court declined to engage in the "useless formality" of a remand because the plan administrator had a legitimate alternative ground for its denial of benefits. In *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 461 (6th Cir. 2003), the Court stated, "Where administrators have failed to comply with the procedural requirements of [29 U.S.C. § 1133], it is ordinarily appropriate to reverse the denial of benefits and to remand the case to the plan

administrators or the district court." (Citing *VanderKlok*, 956 F.3d at 619). Accordingly, the remedy required to correct a plan administrator's failure to meet ERISA's notice and appeal requirements does not appear to be a point of well-settled law.

Here, the administrative record filed by Defendant does not meet the notice requirements of § 1133 and its regulation. While the substantial compliance rule requires a court to consider all communications between a plan administrator and a plan participant, Defendant identifies only (1) that Plaintiff contacted it by telephone and so learned that Defendant needed documentation to show that she was the decedent's estate's personal representative and (2) that Defendant sent her a letter on April 11, 2005 advising her of its "final decision regarding your appeal." Defendant's brief does not identify any other document or communication directed to Plaintiff regarding her decedent's claim.[6]

Next, Defendant's first (and apparently only) written notice to Plaintiff does not meet the requirements of 29 C.F.R. § 2650.503-1(g)(1). That written notice does not contain any reference to the plan provisions that form the basis of the denial, does not inform Plaintiff what information she must provide to perfect the claim, and does not inform Plaintiff of the appeals process.[7] Nor does that first written communication to Plaintiff of a "final decision" provide her with a "full and fair" opportunity for review before the plan administrator. Based on the communications that the Court could glean from the numerous and numberless documents presented as the administrative

---

[6] The myriad medical bills may contain such information, but a cursory review of the unmarked documents revealed nothing pertinent to the notice question. Nor has Defendant indicated the existence of any such communication.

[7] The April 11, 2005 letter from Defendant's associate medical director does refer to subsequent pages that apparently discussed the possibility of a "voluntary review," but those pages are not included in the administrative record. AR, Ex. F. As such, the Court cannot review them.

record, Defendant's contact with Plaintiff did not meet the requirements of notice or opportunity for review under § 1133.

To the extent that other communications regarding the denial of the claim occurred, those communications were directed to the nursing home. Defendant's database notes show phone contact with the nursing home, a message about the denial of benefits left with a person identified only as "Shawn," and a letter to the nursing home's bookkeeper on January 21, 2005. Section 1133(1) requires "adequate notice *in writing* to any *participant or beneficiary* whose claim for benefits under the plan has been denied." (Emphasis added.) The foregoing notices, even if the lack of written communication sufficed under the "substantial compliance" rule, were directed to the nursing home. Those notices were not directed to Plaintiff (or to Plaintiff's decedent at some point before her death). Although the nature of billing for healthcare services may involve communication with both the recipient and the provider of services, the language of the statute does nothing to equate providing notice to a healthcare facility with providing notice to a plan participant.

Importantly, the untraceable state of the documents in the administrative record and the fact that neither party has broached the issue of notice makes it difficult to conclude with certainty that a failure of notice occurred. The difficulty in navigating the record, however, also prevents the Court from affirming the plan administrator's denial of benefits. Evidence of the very process that the Court must review is either absent or unidentified. The numerous deficiencies of notice, even if the underlying rationale for them might yet be shown by Defendant, forestall the Court from concluding that Plaintiff has received a complete opportunity to challenge Defendant's decision or a full and fair opportunity for review of that decision, prior to filing suit. On that basis, the Court

cannot affirm the plan administrator's denial of benefits.[8] Consequently, the Court will remand the case to the plan administrator for a determination of coverage that complies with the notice and appeal requirements of ERISA.

V.

Accordingly, it is **ORDERED** that Plaintiff's motion to affirm the plan administrator's denial of benefits [dkt #11] is **DENIED**.

It is further **ORDERED** that Defendant's motion to deny the plan administrator's denial of benefits [dkt #12] is **DENIED**.

It is further **ORDERED** that the case is **REMANDED** to the plan administrator for a determination of coverage that complies with the notice and appeal requirements of ERISA.

It is further **ORDERED** that the hearing scheduled for 3:30 p.m. on **July 23, 2007** is **CANCELLED**.

                                                  s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge

Dated: July 18, 2007

---

[8] Because of the deficiencies of notice, the Court has not considered Defendant's alternative and largely undeveloped argument based on the plan's limitations period in Appendix A, II.G. That provision bars filing suit until 30 days after the exhaustion of the appeals procedure; this fact militates in favor of concluding that the accrual date for Plaintiff's claim could fall no earlier than that time frame permits. If some other accrual date applies, however, Defendant has done little to tackle such thorny legal issues as what analogous state limitations period, in the absence of a federal limitation, applies, *see United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56 (1981), or whether the principle of incorporating a state law limitations period for federal claims sweeps in state precedents that permit contractual constraints on limitations periods, as in *Rory v. Continental Ins. Co.*, 703 N.W.2d 23 (2005). *See generally* 2 ERISA Practice and Procedure 2d ed. § 8:18 (2002 & 2007 Supplement). Finally, that the appeals procedure was not properly made available to Plaintiff prevents the Court from concluding that the triggering event for the limitations period – the exhaustion of the appeals procedure – has yet occurred.

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on July 18, 2007.

         s/Tracy A. Jacobs
         TRACY A. JACOBS